**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PETER W., ) | |
| ) | |
|        **Plaintiff,** ) | |
| ) | No. 18 C 7461 |
|        v. ) | |
| ) | Magistrate Judge Jeffrey Cummings |
| ANDREW SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
|        **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Peter W. ("Claimant")[1] brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") that denied Claimant's application for Supplemental Security Income ("SSI") under the Social Security Act. The Commissioner has brought a cross-motion for summary judgment seeking to uphold the Social Security Agency's ("SSA") decision. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons stated below, Claimant's motion for summary judgment (Dckt. #24) is denied and the Commissioner's cross-motion for summary judgment (Dckt. #26) is granted.

**I. BACKGROUND**

At some point not identified in the record, Claimant's parents brought a medical malpractice suit on his behalf after Claimant's infantile glaucoma went undiagnosed until he was

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, only the claimant's first name shall be listed in the caption. Thereafter, we shall refer to Peter W. as Claimant. Claimant's motion states that this action has been brought by the parents of Peter W. The Complaint states that Peter W. has brought it himself, however, and the Commissioner has briefed the case with that assumption.

1

one year old. (R. 127). The suit settled for $20,000, and the proceeds were placed in a certificate of deposit. (R. 128). On October 25, 2002, the Probate Court of Will County, Illinois granted the parents' petition to create a special-needs trust for Claimant pursuant to the Omnibus Budget Reconciliation Act ("OBRA") of 1993. 42 U.S.C. §1396p(d)(4)(C). Claimant's parents were appointed as trustees and were directed to fund the trust with whatever assets that Claimant possessed. (R. 13-14). The $20,000 settlement payment was then placed in the OBRA trust. The trustees were permitted to purchase goods and services for Claimant but not to directly distribute cash from the trust's assets. (R. 17). The trust was irrevocable and contained the following language that forms the basis of the current dispute:

> Unless sooner terminated by exhaustion of corpus, this Trust shall terminate upon [Claimant's] death. Specifically, in accordance with 42. U.S.C. [§]1396p(d)(4)(A),[2] any amount remaining in the trust at [Claimant's] death (up to the amount expended by the State of Illinois, or any other state, for [Claimant's] medical assistance) shall be paid to the appropriate State agencies, as reimbursement to the State of Illinois or such other state as has provided benefits to [Claimant] during his lifetime, except that the Trustees may first pay any outstanding, reasonable expenses for maintaining the existence of the Trust, *any taxes and fees, and/or such other items which may be paid, prior to reimbursement to the State, pursuant to statute or regulations now in existence or hereafter enacted or issued*.

(R. 17) (emphasis added).

Claimant later applied for SSI benefits on February 23, 2015 at age 19. The SSI application form notified Claimant that he would not be eligible for benefits if his resources exceeded $2,000. *See United States v. Reiter*, 527 Fed.Appx. 512, 513 (7th Cir. 2013) ("The SSI program is based on need and is not available to anyone whose financial resources, excluding

---

[2] 42 U.S.C. §1396p(d)(4)(A) exempts certain trusts from the general rule that assets held in a trust are a countable resource for SSI purposes. It describes an exempt trust as one "containing the assets of an individual under age 65 who is disabled . . . and which is established for the benefit of such individual, a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter."

2

certain property, exceed $2,000.") (citing 20 C.F.R. §416.1205). Money held in a trust is ordinarily included in a claimant's assets for SSI purposes. Assets in a qualified special-needs trust, however, form non-countable resources that do not prevent a claimant from receiving SSI benefits even if they exceed $2,000. *See Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015). Claimant's SSI application stated that though he lived with his parents and had no income, he did have $1,000, some bonds, and the assets in the special-needs trust. (R. 26-27). Later documents showed that the trust had a balance of $24,264.02 as of October 2015. (R. 42).

Claimant's SSI application was denied initially and upon reconsideration because the SSA determined that his resources exceeded the $2,000 limit. (R. 44, 55). The SSA gave three reasons for that conclusion: (1) the special-needs trust contained an early termination clause; (2) it permitted payments directly to relatives and friends to visit Claimant; and (3) it lacked a valid payback provision that would require that the assets remaining in the trust upon dissolution be used to reimburse the State of Illinois for medical benefits that the State had provided. The SSA found that these deficiencies meant that Claimant's trust must be treated as a countable resource. (R. 139-40).

Claimant then sought a hearing with an administrative law judge ("ALJ"), who issued an unfavorable decision on October 23, 2017. The ALJ's reasoning, however, differed significantly from what the SSA had stated at the reconsideration level. Contrary to the SSA's conclusion, the ALJ found that the trust did not have an early termination clause and that it did have a valid payback provision. (R. 117). The ALJ did not specifically address the SSA's finding that the trust impermissibly allowed payments to relatives. As Claimant's attorney pointed out, however, the trust clearly stated that payments could only be made to *Claimant* to visit relatives – not to relatives so that they could visit Claimant. (R. 110).

Having rejected the SSA's earlier reasoning, the ALJ noted that a special-needs trust created before December 13, 2016 – also known as a Medicaid payback trust – can be exempt from the $2,000 resource limit if it meets three requirements: (1) the trust contains assets for a disabled person under the age of 65; (2) the trust has been established for the disabled person by a guardian or court; and (3) the trust contains a provision that "the State(s) will receive all amounts remaining in the trust upon the death of the individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State Medicaid plan." (R. 117) (citing 42 U.S.C. §1396p(d)(4)(A)).

The ALJ determined that the trust's language quoted above allowing the trust to pay "any taxes and fees" before reimbursing the State for Medicaid payments violated the third requirement for an exempt trust. She noted that the SSA's Program Operations Manual System ("POMS") – which the SSA relies on to interpret the Social Security Act – defines the expenses that are allowed upon the termination of a Medicaid payback trust. The POMS states that a trustee may only give payment priority for (1) any taxes owed to the state or federal government on behalf of the trust and (2) "reasonable fees for administration of the trust estate." POMS SI 01120.203(E)(1). Payments that cannot be made before reimbursing the State include (1) "taxes due from the estate of the beneficiary other than those arising from the inclusion of the trust in the estate;" (2) inheritance taxes due for residual beneficiaries; (3) debts owed to third parties; (4) funeral expenses; and (5) payments to residual beneficiaries. POMS SI 01120.203(E)(2). The ALJ found that the trust's language of "any taxes and fees" failed to specify which taxes and fees the trustee could prioritize over others. Since this language could theoretically allow the trustee to make payments prohibited by the POMS, the ALJ concluded that the trust did not meet all of the requirements for an exempt trust. (R. 118).

The ALJ also determined that the trust did not meet the undue hardship exception. A trust like Claimant's may qualify as a Medicaid payback trust if (1) counting it as a resource would make the claimant ineligible for SSI; (2) the claimant alleges that he or she would be deprived of food or shelter without receiving SSI; and (3) the trust specifically prohibits the trustee from disbursing funds from the trust to the claimant for his or her support and maintenance. POMS SI 01120(G)(2). Because Claimant stated in his SSI application that he lived with his parents – who have not disbursed any portion of the trust funds – and receives free food and shelter, the ALJ therefore concluded that the trust was not exempt under the undue hardship exception. (R. 118).

Claimant sought review of the ALJ's decision by the Appeals Council on December 27, 2017. The request included an affidavit from Heather Voorn – an attorney specializing in drafting trusts – but the Appeals Council declined review and found that Ms. Voorn's affidavit did "not show a reasonable probability that it would change the outcome of the decision." (R. 4). Claimant subsequently filed suit in the District Court on November 9, 2018.

## II. LEGAL STANDARD

Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1983). A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent symptom evaluations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at

whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. DISCUSSION

#### A. The ALJ and the Appeals Council Did Not Err by Not Considering an Expert Statement

Two days prior to the March 23, 2017 hearing, Claimant's attorney informed the ALJ that he intended to call trust attorney Heather Voorn to testify on the compliance of Claimant's trust with the requirements for an exempt trust. The ALJ declined to hear testimony from Ms. Voorn at the hearing. Ms. Voorn then provided the ALJ with an affidavit after the hearing that addressed the three reasons that the SSA gave at the reconsideration level for denying Claimant's SSI application. Claimant argues that the ALJ erred by not permitting Ms. Voorn to testify and by not considering her affidavit in the October 23, 2017 decision.

An ALJ has a duty to ensure that a claimant receives a full and fair hearing. *Davenport v. Astrue*, 417 Fed.Appx. 544, 546 (7th Cir. 2011). The regulations also provide that a claimant "may present witnesses and question any witnesses at the hearing." 20 C.F.R. §414.1416(b)(4). Even if these provisions required the ALJ to take testimony from Ms. Voorn and consider her affidavit, Claimant has made no showing that he was harmed by that omission. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (stating that disability decisions are subject to a harmless error review). Claimant states that Ms. Voorn's testimony was necessary at the hearing

6

"to provide legal opinions" about Claimant's trust. (Dckt. #24 at 5). Claimant was represented by counsel at the hearing, however, and has not explained why his attorney could not have presented any legal claim to the ALJ that Ms. Voorn was prepared to give. Moreover, nothing suggests that Ms. Voorn's affidavit – which presumably sets out her proposed testimony – would have changed the ALJ's decision. The affidavit explains why the SSA's three reconsideration-level reasons for rejecting the exempt status of Claimant's trust were incorrect. Claimant overlooks that the ALJ implicitly adopted everything that Ms. Voorn stated in her affidavit by finding "that the Agency's previous reasons for challenging the trust are invalid." (R. 117).

The same reasoning applies to Claimant's argument that the Appeals Council erred by finding that Ms. Voorn's affidavit was not likely to have led the ALJ to a different result.[3] Claimant has not provided any explanation of why the Appeals Council's finding was incorrect, and the ALJ's decision clearly shows that it was based on grounds different from those stated in the Voorn affidavit.

### B. The ALJ Properly Construed the Trust's Language

In his most substantive argument, Claimant contends that the ALJ erred in finding that the "taxes and fees" language of his trust is too vague to allow the trust to be construed as a Medicaid payback trust. Claimant points out that the trust permits the trustee to pay "any taxes and fees, and/or such other items which may be paid, prior to reimbursement of the State, *pursuant to statue or regulations now in existence* or hereafter enacted or issued." (R. 117)

---

[3] A reviewing court has jurisdiction over the Appeals Council's decision when it determines that additional evidence was not "new and material" as required by 20 C.F.R. §404.970. *See Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). The Appeals Council stated (1) that Voorn's affidavit did not show a reasonable probability that the ALJ would have reached a different decision but (2) that the Council "did not exhibit this evidence." (R. 4). That leaves it somewhat unclear whether the Council actually considered Claimant's evidence. Courts have criticized identical language from the Appeals Council on the same ground but have nevertheless found that a reviewing court may consider the question of whether the evidence submitted to the Appeals Council was material. *See Teresa F. v. Saul*, No. 1:18-1967, 2019 WL 2949910, at *9 (S.D.Ind. July 9, 2019).

(emphasis added). Claimant contends that the term "regulations" necessarily includes the provisions of the POMS. Since the POMS SI 01120.203(E)(2) explicitly prohibits the taxes and fees that the ALJ cited in her decision, Claimant argues that the trust automatically precludes any forbidden payments.

The Court disagrees with this reasoning. The trust's reference to "regulations" does not incorporate the POMS because the POMS does not have the status or the enforceability of a regulation issued by the SSA. "The POMS is not a regulation enacted pursuant to formal rulemaking procedures and therefore does not have binding legal force." *Raymond v. Barnhart*, 214 F.Supp.2d 188, 191 (D.N.H. 2002) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)). Instead, it provides "internal guidance" for the SSA by interpreting the Social Security Act and other statutes and regulations. *Hall v. Sebelius*, 689 F.Supp.2d 10, 15 (D.D.C. 2009). The POMS does not even "impose judicially enforceable duties on either [a] court or the ALJ," *Lockwood v. Comm. of Soc. Sec.*, 616 F.3d 1068, 1073 (9th Cir. 2010), much less on a trustee who is deciding how to distribute a trust's assets upon termination. Certainly, the POMS would give the trustee of a special-needs trust guidance on the types of payments that can be properly made upon the trust's termination. The ALJ's point, however, was that the trust's language makes it *possible* for the trustee to pay taxes that are prohibited by the POMS. Since the trust does not incorporate the POMS in the manner that Claimant alleges, the Court agrees that the trust does not obligate the trustee to limit payments upon termination to those allowed by the POMS SI 01120.203(E)(1).

Claimant further argues that any lack of clarity on the payment issue should be construed in his favor because the trust states that it was created so "that the beneficiary [may] qualify for Supplemental Security Income and this trust [should] be considered as an irrevocable trust

8

pursuant to Section SI-01120.200D.2" of the POMS. (R. 15). Claimant asserts this claim in a conclusory manner with a fleeting citation to *Davidson v. Colvin*, No. CF 12-09968, 2014 WL 934527 (C.D.Cal. March 10, 2014). *Davidson* involved a special-needs trust that did not list the State as the first payee or give it priority over other creditors or beneficiaries. An amended version of the trust gave priority to the State but also permitted the trustee to distribute any trust assets "to the Beneficiary's heirs at law." The ALJ found that the trust was not exempt because this beneficiary payment provision appeared to conflict with the trust's language concerning payment to the State. *Davidson* reversed the ALJ's decision by finding that any ambiguity concerning the trustee's authority to make payments could be "clarified by the trust agreement's statement of intent, which expressly states that the trust is intended to comply with federal law governing the requirements for a special needs trust under the SSA." *Id*. at *3.

The Court disagrees with Claimant that *Davidson* applies to this case. Claimant's reliance on the trust's citation of the POMS SI 01120.200(D)(2) is misplaced. That provision states:

> If an individual does not have the legal authority to revoke or terminate the trust or to direct the use of the trust assets for his or her own support and maintenance, the trust principal **is not** the individual's resource for SSI purposes.
>
> The revocability of a trust and the ability to direct the use of the trust principal depend on the terms of the trust agreement and on State (or Tribal) law. If a trust is irrevocable by its terms and under State law, and the trust beneficiary cannot control or direct use of the trust assets for the trust beneficiary's support and maintenance, the trust **is not** a resource.

(emphasis in original). This language only requires that a special-needs trust must be irrevocable in order to qualify as an exempt resource. That has no relevance to this case because the ALJ clearly found that Claimant's trust "is an irrevocable trust." (R. 117).

9

Insofar as Claimant is arguing that *Davidson* means that his trust's general statement of intent shows that it is exempt, his position is based on contradictory reasoning. Claimant's trust does state at one point that it was created pursuant to the trust exemption requirements of 42 U.S.C. §1396p(d)(4)(A) outlined above, *supra* at n. 2. The ALJ found that was insufficient to make the trust exempt because the POMS places additional payment restrictions on a trustee that are not specifically outlined in the statute itself. The trusts in *Davidson* also lacked these POMS restrictions, but the court determined that the POMS does not apply to this aspect of §1396p(d)(4)(A). Noting that the POMS is only given deference when a statute is unclear, *Draper*, 779 F.3d at 560-61, *Davidson* reasoned that the POMS did not apply because the statute's language was clear. *Davidson*, 2104 WL 934527, at *3. Contrary to *Davidson*, however, Claimant's position rests on the assumption that the POMS *does* apply and that his trust's reference to "regulations now in existence" incorporates the POMS SI 01120.203(E) as restrictions on the trustee's ability to make payments when the trust terminates. Claimant, who has made no attempt to reconcile his conflicting position on the applicability of the POMS, has failed to provide a persuasive reason to conclude that the ALJ's interpretation of his trust's language was incorrect.

### C. The ALJ Gave Sufficient Notice of the Hearing Topics

On February 9, 2017, the ALJ sent Claimant a Notice of Hearing informing him of the upcoming administrative hearing that was held on March 23, 2017. The notice alerted Claimant to what the ALJ would consider at the hearing:

> The general issue is whether you are eligible for [SSI] under sections 1602 and 1611 of the Social Security Act. The specific issue is whether you have income or resources in excess of the amount set by the regulations as the maximum allowable to be eligible for [SSI].

(R. 74). Claimant argues that the ALJ's notice was insufficient because it did not specifically inform him that she would address the trust language just discussed concerning the payment of taxes and fees. Although Claimant does not cite any authority or regulation to support his claim, both the ALJ and a claimant may raise new issues that were not considered at the initial or reconsideration stages of the SSA's disability review. If the ALJ raises a new issue, he or she must notify the claimant "and all the parties about the new issue any time after receiving the hearing request and before mailing notice of the hearing decision." 20 C.F.R. §404.946(b)(1).

  The Court disagrees that the ALJ's February 9, 2017 notice requires remand. The ALJ stated that the specific issue before her was whether Claimant had resources in excess of those permitted to receive SSI benefits. That was the issue involved at the reconsideration stage, and it is what the ALJ addressed in her decision. There was therefore nothing new about her consideration of the excess resource issue. Claimant appears to be arguing that the ALJ's *reasoning* concerning his excess resources constitutes a "new issue" because it was not the same reasoning that was used on reconsideration. Claimant has not made any argument to support such a claim, however, and has not shown how any error the ALJ may have made on this issue amounts to more than harmless error.

## CONCLUSION

For these reasons, Claimant's motion for summary judgment (Dckt. #24) is denied and the Commissioner's cross-motion for summary judgment (Dckt. #26) is granted. The ALJ's decision is affirmed.

ENTER:

_____
**Hon. Jeffrey Cummings
United States Magistrate Judge**

**Dated: October 13, 2020**